& Southern Financial Group Company, Flexible Benefits Plan, et al. Oral Argument, 15 minutes per side. Mr. Abrams for the Defendant's Appellants. Please report. Good morning, Mr. West Abrams. I see my clock is already running. I reserve three minutes of rebuttal. Great. Here on behalf of the appellants, this case is about a claim for long-term disability benefits under an arrest plan. Plaintiff happily, Sherry Leake, has achieved 24 months of those benefits. This lawsuit is concerning whether she's entitled to long-term disability benefits beyond 24 months. After remanding the case back to Western & Southern in a 2019 decision to look at that question again, the district court ultimately awarded Ms. Leake those benefits in a November 2021 decision. We would ask this court to reverse some of that and vote standard review for three reasons. First, the plan contains a provision that limits benefits to 24 months if the disability is caused by chronic pain syndrome. And chronic pain syndrome has been rationally interpreted by Western & Southern under the plan. And everyone agrees that the arbitrary and capricious standard applies to that question. Judge Seiler wrote in the Shields v. Reader's Digest opinion that when it's possible to offer a reasoned explanation based on the evidence for a particular outcome, it is not arbitrary and capricious. And we would submit to the panel that it is possible to offer a reasoned explanation for the outcome here. If you look at the records and the medical evidence, you see that Western & Southern views chronic pain syndrome as chronic pain unassociated with a particular diagnosis. It's recognized as a poorly defined condition, as we've laid out in the brief. And that definition is consistent, though, with one of the many that practitioners use to describe the condition. And actually, just to clarify, you use the phrase arbitrary and capricious? Is that the standard that was applied here in this case? Well, there's two decisions we're looking at. The February 2019 decision, the district court did apply arbitrary and capricious standard. And that's not disputed on appeal. And that was the original? That was addressing the chronic pain syndrome? Yes. Okay, so yeah. The second opinion, then, with respect to the other half of the case, that was the NOAA? Yes. And we've approved that issue. We believe that arbitrary and capricious apply across the board. Did your friends on the other side ask for de novo in that second round? Yes, I believe they did. I mean, when we approved it initially, there was no indication that anything other than arbitrary and capricious would apply, speaking of the initial benefits determination and then the district court's February 2019 decision. And then we go back on remand, and it's essentially the same process over again. It wasn't until the same people were involved, and yet we get back into the November 2021 decision, and the de novo standard applies. And I'm happy to go into why we believe that arbitrary and capricious standard should apply if that's your question, Your Honor. But I just wanted to make sure that you could remember between the two, the distinction between the two. Yeah. So as far as chronic pain, the district court did analyze that in the February 2019 decision and applied the arbitrary and capricious standard. So that's not disputed. It hasn't been argued by the athlete as being incorrect. The appealant was conceded the law. And our position is that it was not arbitrary and capricious for Western and Southern to apply that limitation because the medical records from this late street physician consistently state that her pain was out of proportion to arthritis. One of the reasons for the first, for the remand, was I think the chronic pain syndrome. So the district judge's got a view on that. But also the court, I thought, found that there was insufficient notice provided under ERISA about the basis for the decisions. And I was wondering if you would address that. It seems to me that the initial denial letter talks about chronic pain, doesn't talk about whether she would be able to perform any other job. That comes in later. But I don't, I'm not sure whether that notice, the initial notice was sufficient on that. Judge O'Hara, a few things on that. First, the district court didn't remand to do anything over on chronic pain syndrome. It rendered an interpretation of chronic pain syndrome that is not set forth in the plan. We disagree with and set forth some briefs. As to the notice issue, that was one aspect of remand. I would say sort of an alternative for the district court. The primary basis for the remand was that the district court viewed the long-term disability benefits definition, which is in 2.38B of the plan, as setting forth sort of a two-phase process. We have these benefits for 24 months and then beyond 24 months. And you can only look at the beyond 24 months after the first two years of benefits expired. That is not, there is no process whatsoever for that plan. It's recognized by the appellee in page 47 of the brief. No plan provision suggests that there's going to be a reassessment of the change in disability to date. We have deposition testimony in the record. Somebody's been with this company for 25 years. He says he's always assessed this. When do you file for benefits? We selected to file our plan back in 2016. The ruling was made on pride and pain center. And I think to get to your question more specifically about notice, Judge Albania, you have to look at what she asked for in her administrative appeal. Because the 24 months of benefits have already been awarded. Those have been paid. So we weren't really re-looking at, okay, well, was that initial determination correct? Should we reverse on the 24 months of benefits that we awarded? She said in her appeal, I need the standard for long-term disability benefits beyond 24 months. The district court relied on the MacArthur case and its decision for the notice issue. There the claimant was completely blindsided with a new explanation for the denial in an appeal denial letter at the administrative level. In this case, we don't have that because we have the claimant actually asking us to decide a question. So under the Sixth Circuit test for substantial compliance for the notice requirement where you look at every communication from the plan to the claimant to the claimant to the plan, our position is that we achieved that. My understanding is in order for her to be denied the benefits, she had to be essentially unable to work and it not be from chronic pain syndrome as defined wherever. We can go back and forth on that. But I guess my question is that notice said you are not getting benefits because of chronic pain. It doesn't seem to give a little. There's not a lot of elaboration there, honestly. It doesn't say that you are able to work or are able to find another job, does it? The appeal denial notice does say that. That's the initial denial, not the appeal. The initial denial is basically on chronic pain and she's given 24 months of benefits for that. So the appeal comes up. But the initial denial also denies permanent long-term benefits, too, doesn't it? Yeah, because she's effectively, yes, because she's limited to 24 months of benefits. So then the appeal comes up and she says she doesn't submit any new evidence. You have to think about the purpose of the notice requirement here. It's so that – Right, yeah, it's to submit new evidence. But the letter doesn't say you can get another job and you should provide some evidence of how you can't get another job. That's what I'm saying. I don't see how the initial denial gave her enough notice. I think your argument is, well, it doesn't really matter. She should have known based on the totality of the case of circumstances and the fact that we denied it that we necessarily thought that you could get another job or something. I assume. Is that your argument? Well, I would say two things. One is that she argued in her appeal letter that she met the standards. So she wanted us to consider it. All of her medical records had already been submitted. It's unclear what else could have been submitted. And if you look at – okay, assume there was a notice violation. What's the remedy? The Sixth Circuit, for a notice violation, the remedy is always remand back to the administrative level. And the result here simply would not change for looking at ability to work. But – No, what I'm saying is the – right, so the remedy is remand, which is what Judge Rosler did. But he sat there and he said, hey, your notice wasn't sufficient. I'm remanding back for some more stuff to happen. So why is that not – and you're saying, well, he erred. He shouldn't have remanded. He should have basically just affirmed the denial of benefits under an arbitrary capricious standard. But you just said, look, the violation – if there is a notice violation, why isn't remand the right remedy? Sure, because the remand here wasn't simply to correct a notice issue. The remand here was to modify the long-term disability assessment and make us look at that question again as of a different timeline. Not when she applied for benefits in 2016 and we rendered the decision in 2017. It was remand, and I believe that the plan requires you to assess that question in October of 2018 when the 24 months of benefits expires. Tell me the difference between this benefits department and the benefits committee. Who made this decision and was it the correct committee or whatever was supposed to do it under the plan? Well, Judge Siler, in the first decision it wasn't in dispute. The benefits department is noted in the plan as assisting the benefits committee, which is the main plan administrator. Are they the same thing? No, they're not the same thing. The benefits committee is the main plan administrator. The plan allows it to engage others to assist it. The benefits committee is – I mean, I could take six or seven individuals and executives at Western Southern to oversee globally the administration of the plan. The benefits department is a business unit within Western Southern with 40, 50 employees, and they assist with claim administration, which is one part of the plan administration. Doesn't the benefits committee have its own quorum requirement for making a decision? There is a quorum requirement in the plan. You can't use the assist language to get around the quorum, right? Could they delegate, hey, look, we need three people here to make a decision. Let's just delegate it to the other benefits committee or whatever. Let's just delegate it and they can make a decision, and that way we never have to have a quorum. Well, respectfully, the quorum doesn't ever need to get there, first of all. Second of all, if it does, the quorum requirement will – Don't we have to make a decision about whether de novo review applies to the second decision? If we disagree with you on the first part of the remand? If you disagree and do not reverse on the first decision, then you would be looking at the second decision. Yes, you would have that decidedly applicable standard of review. I think the plan here for the second decision can decide whether it's de novo or arbitrary malicious. And I think the quorum requirement doesn't really apply to these individual claim adjudications. I think you have to read that language in connection with the other parts of the plan that say they can engage others to assist it in plan administration. And I think Judge Steinler brought in a similar plan language in the Bridgewater case which we cited in our brief. We're in a plan there, delegated and administrative. But I just feel like in these other cases the language in the plan is a little bit more explicit than the language in your plan about delegation, about decision-making. I mean, assist to me is not a delegation of power. Would you agree? If I say I can get all these people to assist me, it doesn't mean that I can delegate to them decision-making authority, does it? Just a plain language of assist. I disagree, Your Honor, because, you know, in one person on the Bridgewater case, that exact language is used. The administrative committee is the main plan administrator. The decision is rendered by a plaintiff review committee. The plaintiff says the wrong person side of my claim. This court reviews the language in the plan, which says the administrative committee can engage others to assist it. And there was no issue. Okay. All right. Can I ask you a close question to follow up, not on this point, but on the notice point that Judge O'Malley was asking you about? I don't know if I followed all that entirely, but with respect to Judge Bertelsman's second decision, did he send any notice issue there with respect to the denial of the loan? So that was not an issue of notice. With respect to the denial of total benefits beyond 24 months. He didn't find any notice problem. He just sent a de novo overview of the contract breaches and then found for the other side. That's correct. And notice is sort of peripheral here because the ultimate issue is what is the time period for the assessment of the inability to work. Just remand based on a notice issue, that's easily cured. The problem of a useless normality under this court's decision is that the judge can't because we have a treating physician. I was just asking if Judge Bertelsman hung up about notice. He didn't find for you, but was it a notice problem? In the November 2021 decision, notice was not an issue. Thank you. Okay. Thank you. You'll have to leave now. Thank you. My name is Claire Dantz on behalf of the plaintiff, Sherry Linkey. The district court confidently concluded in 2021 after, in 2020, I'm sorry. After four years of litigation that Ms. Linkey is clearly entitled to long-term disability benefits under the plan. Is that better? Okay. The district court confidently concluded that Ms. Linkey satisfied her burden under the plan establishing that she's disabled from any and every occupation beyond October 2018. In support of that conclusion, Judge Bertelsman looked at Western Southern's own paid file reviewer who concluded that she would be unable to work in even a sedentary occupation. That she'd be unable to walk for more than 15 minutes, one hour per day. That she'd be unable to stand. When was that evaluation done? That one was performed in 2019. Is this Dr. Kramer or someone else? It's named Dr. Kramer. Okay. Well, Dr. Kramer said that she didn't meet the disability standard for permanent disability benefits. Dr. Kramer concluded that she did not believe she, she was asked to interpret the plan's definition of disability. And this circuit regularly concludes that that is a task of a plan administrator, not a doctor. When you look at Dr. Kramer's actual limitations, she lists a litany of them. And she explains that... You're guessing her best evidence is Dr. Kramer? No. Okay. Well, that's what you're talking about. Because Dr. Kramer came out in my view the other way. Okay. Well, I respectfully disagree. It was also the most timely. It was the one that was done closest. It was done right at the time that the long-term, or the permanent benefits would have started. That one was performed in September 2019. Now, was it performed or not finished? Completed. Yeah. Was it performed? I thought it was performed. I'm sorry. You're right. June 2019, after six months... Okay. It's not the most... Is there something... I thought that was the best evidence for the other side. And you're saying that's your best evidence. No. What I'm saying is that they relied on that without applying the restrictions that she provided to establish whether that meets the definition of disability or not. At the same time, she showed in her report, the 2019 versus the 2017 report, it shows that her condition severely deteriorated during that time period. In addition, Drs. Motel and Dr. Isley both submitted medical source statements that are more timely than Dr. Kramer's. And they were just a couple months after the court's remand order, in which they concluded that she couldn't sit, stand... If there's some evidence that suggests that she could perform some other job, okay, and wouldn't meet the definition, even if there's some dispute, it wouldn't be arbitrary and capricious for the client to deny the benefits at that point, right? I mean, if somebody said, if some doc looks at her and says, yeah, I don't think she meets the definition, and they say, okay, I don't know, that wouldn't be arbitrary and capricious to me, would it? It depends on the circumstances. It depends on the basis for that opinion. If, for instance, Dr. Kramer's 2019 report, that was the result of a truncated records, Western Southern truncated the records that they gave her. We submitted over 350 pages on appeal. Western Southern's general counsel and members who were not part of the plan, benefits committee or the benefits department, decided to remove those records that they didn't want her to review, gave them to her, gave part of those records to her, and then asked her... The records that they gave her, I'm sorry, were up to October 16, 2018. Anything after that, they excluded. So she couldn't review or consider a complete record as required under the claims regulations for a full and fair review. She calls Dr. Montel because it's a year later, and she'd be asked to get an update. So she states in her report she needed an update from Dr. Montel without the ability to consult Dr. Montel's own functional capacity statement saying that she was disabled. What's the most egregious thing that the company did here because Judge Berkman imposed a lot of penalties here? Is it one thing or just everything? It's everything combined over a significant period of time. Even basic things like who is on the benefits committee, who is in the benefits department, is subject to change according to their position. They took one position in the first round of litigation that Mike Altenow, who's general counsel, was in the benefits department and then changed it in the second round of litigation and said, oh, wait, he's not part of the benefits department. They had executives for the company, not executives or not agents of the benefits department. They had company plan sponsor executives come into these meetings and vote to deny the claim. Who are those people who were on either of the committees? Correct. Or the? Correct. HR executives. And then on remand, the same people, Mike Altenow, Steve Hussey, and Dr. Clark, engage in these private meetings without the benefits department or a quorum of the benefits committee together and decide issues such as are we going to truncate the records that we give to a doctor to review the files? What's the, I'm trying to, there may be a form and substance. Formally, you know, maybe the committee made a decision, maybe the department made a decision, maybe that wasn't 100% in accord with what the documents say, although the documents also say that the committee has broad discretion to bring in others as it needs. But these are all Western Southern employees. Correct. Western Southern. All these people. Everyone. No. Well, some are retired. I believe some individuals on the benefits committee are retired executives who no longer are employees. Current or former. In other words, what's the harm here? What's the prejudice? If you have cases that say everyone's sort of under the same corporate name, company, doesn't it necessarily matter who's made the review as long as there's a final determination? Well, that would invalidate the entire purpose of having an appropriately named fiduciary review a claim. That would mean that the CEO of Western Southern can come into this meeting and decide to deny Ms. Leakey's claim and decide, you know, whether to vote on to deny it or not. Because that person's on either the committee or the department or because that person's on the committee and they can't show up to department meetings. Under the terms of the plan, the plan specifically limits discretion and authority to decide a claim to the plan administrator. The plan administrator is the benefits committee. The benefits committee must operate under specific procedures like this court has mentioned, the quorum and the majority vote. And this court holds regularly that failure to follow the specific plan procedures is in itself a determination. There's a determination and a right to appeal. Right? There's a determination and a right to appeal that, which they did, which you did. I'm just wondering, what's the prejudice? If this is a criminal case, what is this prejudice or harm is there? Well, the prejudice is a criminal case because we disagree with my colleagues' statement that there was no notice issues. In the first decision, the first decision that we made in 2019, Western and Southern, they write a denial letter. They do not reference Dr. Kramer's new report or include the restrictions and limitations or explain the basis for that decision. We appeal it, stating, hey, this is, by the way, that decision came 270 days after the court's remand order. It took a significant amount of time and with no excuse, really. So then we submitted on our appeal information in our position that she remained disabled under both definitions of disability. And instead of arguing or, sorry, not arguing, instead of analyzing our position about the definition of total disability, whether or not she met that standard, it was ignored. And then they have this other, you know, post-litigation doctor, a file reviewer, write an opinion, which is facially unreliable. He has new diagnoses. This is part of it. I'm kind of lost as to where we are. Sorry, this person's name is Dr. Lyar. Can I go back? Are you saying before it went to district court they never put Dr. Kramer forward as the reason partly why they denied benefits? They talked about the complete benefits, the lifelong benefits, the disability. I'm sorry, I asked a question. Are you saying they hit the ball on Dr. Kramer until it got to federal court? Is that it? No. Okay, so. I apologize. We're still trying to understand what the prescience here was. I mean, maybe there's notice the first time around, but look back down. And when you came up on the denial of total disability because there was some job your client could perform, you had that information given to you by the company during the administrative review process. And you came up to appeal, and Judge Burleson appeared to you. Judge Burleson then didn't give them the benefit of arbitrary capricious, but. Judge Burleson also ruled that if the case were reviewed under the arbitrary and capricious standard, it would certainly meet that standard. Part of that goes to, you know, if the plan is not, if the plan is not following the claims regulations, that's in and of itself an arbitrary and capricious denial. That's the issue we just talked about. And I was trying to, right, the committee department. Well, the plan, I'm sorry, the claims regulations. The risk of claim regulations dictate expressly not just what is included in the denial letter, but also how a claim is reviewed. Whether they provide a full and fair review. If they give sufficient information, opportunity to respond to that information. A claims procedure which is not a bar to receiving those benefits. There were a lot of doctors who looked at it. And they all agreed, except for Dr. Wajarski, who Judge Burleson, within his discretion, viewed as outside the administrative record. Well, Dr. McMullin. I mean, there were a lot of doctors who reviewed it. The company made a decision. It was first, you know, got the first 24 months to get the rest. Both definitions of disability are functionally equivalent. Western Southern has not explained, despite our request in the administrative process and our litigation to explain what the difference is. How can one be totally disabled from any occupation, but simultaneously not disabled from any and every occupation? It defies logic. You asked Judge Burleson to apply denial of review and not our discretion. Correct. On what specific cases? Pursuant to Vanderklok, in which he states that egregious procedural irregularities merit the denial of review. Can I ask you, those procedural irregularities, were they with respect to the medical department or with respect to the doctor, the plain documents that you said you didn't get or didn't get them on time? Or a combination of those things? With respect to Western Southern's egregious delay in beginning to process their claim on remand. They waited months. We had to check in on the status. And then after that, it took, that was May when we checked in on the status. They hadn't begun anything yet after three months. The question was about the standard. You asked for denial of review. We asked for denial of review on two grounds. On the benefits committee versus the benefits department making the decision, right or not. With a nuance to that. The primary request for denial of review is based on unauthorized individuals who are non-fiduciaries under the plan making decisions. So they're members who are not even part of the benefits committee. So it's not the benefits committee, whatever that is. Correct. I mean, that's the way I read Judge Bertelsmann's decision to apply for denial of review, that it was based on that. Correct. Okay. And then is the delay also a basis for that? That was in our array. He didn't respond to that. Is there support for that? That if you wait, is it deemed a denial and therefore you would review it de novo? Or is it just a procedural error that one of the penalties are supposed to be de novo? Generally, it would be deemed a denial. But there are, Vanderkloft, the court also says, for egregious procedural irregularities, de novo review can be the remedy. Okay. But Judge Bertelsmann didn't. I know you cited the delay in terms of limiting what the administrative record was going to be, right? But not, I don't know that, recall that you cited it as part of the de novo review. Okay. I think you made that argument. Correct. Can I ask you a question? One of the sanctions issues or penalties or whatever it is I recall was the failure to provide the 2019, I don't know what it was, one of the subject line restrictions and also the trust agreement. I'm struggling to see how those documents were relevant at all in the case. Are they relevant to something? Yes, they're relevant. The 2019 plan was amended to include a new definition of Crohn's pain syndrome. In our mind, that would go to their argument about the definition of Crohn's pain syndrome as it existed. And then the trust document also diverges from the plan document in naming who the plan administrator is. That's an additional prejudice that Ms. Linke suffered. There were other documents that were, the court found to be outside of the statute of limitations that Ms. Linke would have held over a period of years, which also significantly prejudiced her. But he did not impose penalties on her. Okay. All right. Thank you. I just have a follow-up on that. I know at one point you asked for all relevant documents. Then did you make specific requests after? So you get some documents. And, you know, I'm analogizing this to a civil discovery process. Did you then follow up and say, I specifically want the 2019 document or the 2020 document? Or this was, like, way after the fact, actually. You know, we asked, every time there's a denial, we submitted a request for all relevant documents as they're defined in the plan's regulations, which includes plans that are documents that the plan has operated under. And Western and Southern responded each time saying that they would provide this sort of plan description, for instance, but did not. So they had clear notice that that was a relevant document that we were requesting. Thank you. Thank you.  Thank you, Your Honor. First of all, I'd just like to say I think the procedural issues here are irrelevant. One, to the standard of review, we have biomedical applications of Kentucky versus Cole's Illusive Company. That's a judge-the-bar decision for the Eastern District of Kentucky. Quote, in the Sixth Circuit, procedural errors do not convert the standard of review from arbitrary and capricious to de novo. And as I spoke earlier, if there is a procedural issue, then the best you can get is a remand. It's not a substantive grant of benefits. No Sixth Circuit case has ever held that. And to your point, Judge Notman, if one doctor says that the claimant can work, does that mean it's not arbitrary and capricious? And the answer is yes. Each member of the panel has been on a case where that occurred. Judge Notman, you were on the Voight v. P&G case within the last few years where that occurred. Judge Raebler, you were on the Davis case within the last few years writing for the panel in which that occurred. Judge Siler, Almers, FedEx, all of these are within the last two or three years. The law is crystal clear that even if one independent consultant takes a look at the medical records and concludes that the claimant Are you saying, let's go back to standard of review, are you saying that there's nothing that would change the standard from arbitrary and capricious to de novo? Yes, there is. The standard of review is arbitrary and capricious based on the client's grant of discretion under FARSA. And so if I completely disregard the plan and procedures and just do whatever I want to do, that gets reviewed for arbitrary and capricious And we decide, and there's no way it would be arbitrary and capricious. I'm quoting, and since our procedural errors do not convert standard of review, I guess I don't have any context for that statement. What is the procedural error? Is having the benefits committee, I mean, having the development, whatever the other one is, make the decision and not the benefits committee? Is that just a mere procedural error? I mean, that seems like it could be fairly egregious. I don't know. You're supposed to have this. The plan says these five people make this decision. It turns out these other five people make the decision. Is that, that's just a procedural error? Is that, I mean, it could be nefarious. I don't know. Materiality standard or something. What's a materiality standard? I don't think there's a materiality standard as far as procedural errors changing the standard of review. And whether it's classified as a procedural error or not, yeah, I think it's a procedure that's set forth in the plan. And I would disagree that it wasn't followed as we set forth in our agreement. Yeah, I know. But I'm just saying that if every time from now on you said that we're just going to have these five people do it, not the committee. Okay. And you say, look, I think that's a fair reading of the plan. And somebody says, no, that's not a fair reading. The court says, no, it's not a fair reading of the plan. And you say, I don't care. I'm going to keep doing it because all it is is a mere procedural error. So it doesn't matter what I do. It's always going to be arbitrary and capricious for me, right? So these five people will always make the decision. And then we will always use arbitrary and capricious because it's a mere procedural error. And I just don't understand how that could be the case. I would go back to the plan granting discretion to engage others to assist. And as far as plan administration, so you are conceding that part and you're just going back to the regular argument, which is my reading of the plan. If it were my reading, I don't know. But my reading of the plan is just wrong. Assist includes delineation. Is that right? I stand by the procedural errors do not change the standard of review. So there's no possible procedural error that could ever be made that would change the standard of review. That may be right. But is that your argument? I'm not aware of a certain case that has found one. So that's my position. And then secondarily, to respond to your question of whether you just sort of go back and do whatever you want, I don't think that's what's occurring. The same people did this the first time around. And we applied the arbitrary coercive standard. It was no issue. This isn't nefarious pro-decision making. This is how the plan is operating. The benefits department is engaged. The plan allows the benefits committee to engage people to assist it. Claims administration is not the same thing as plan administration. It's one aspect of it. So you're not really delegating plan administration. It's just they're participating in one aspect of the plan. And as well as the fact that Judge Rager pointed out, all of these are agents of Western Southern Financial Group. They're all acting on behalf of Western Southern Financial Group. So it's really form of ourselves. I hear that, but it seems like it proves too much, right? I mean, you can just pick anybody as long as they're getting a paycheck from Western Southern. They can make a benefits determination. Because everybody's a fiduciary of Western Southern to this person. The analysis in the Davis and Finwood cases that dealt with Hartford, there were employees of separate entities who were making decisions. And functionally, that was the analysis. So I would fall back to those cases with the course analysis. Okay. All right. Thank you. Any questions? All right. Thank you. Thank you. Thank you for your recent arguments. Case will be submitted. And we can call the next case.